IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT D. SAYRE,

        Plaintiff,

    v.

CUSTOMERS BANK,

        Defendant.

CIVIL ACTION
NO. 14-3740

## OPINION

**Slomsky, J.**                                                                 **May 29, 2015**

## I.  INTRODUCTION

Plaintiff Robert D. Sayre was employed by ISN Bank, the predecessor of Defendant

Customers Bank, as Vice President and Counsel from June 20, 2005 through March 31, 2010.

(Doc. No. 22 ¶ 9.)  Plaintiff brings this lawsuit against Defendant Customers Bank only, claiming

that Customers Bank and its predecessor, ISN Bank, violated Pennsylvania law by breaching

Plaintiff's severance agreement and collecting certain fees and payments due under a mortgage

loan agreement between Plaintiff and ISN Bank.  Plaintiff also alleges that Defendant's efforts to

collect these fees and payments violated the federal Fair Debt Collection Practices Act.

In the seven-count Amended Complaint, Plaintiff alleges the following claims:

(Count I) violation of the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 Pa. Stat.

Ann. §§ 101-605; (Count II) violation of the Pennsylvania Unfair Trade Practices and Consumer

Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 to -9.3; (Count III) violation of the

Pennsylvania Mortgage Satisfaction Act, 21 Pa. Stat. Ann. §§ 721-1 to -12; (Count IV) Breach of

Contract; (Count V) Setoff; (Count VI) Breach of the Duty of Good Faith and Fair Dealing; and

(Count VII) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (2013). (Doc. No. 22.)

On October 27, 2014, Defendant filed a Motion to Dismiss all seven counts of the Amended Complaint. (Doc. No. 26.) On November 11, 2014, Plaintiff filed a Response in Opposition to Defendant's Motion. (Doc. No. 29.) On December 22, 2014, the Court held a hearing on the Motion. (Doc. No. 33.) Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 26) is now ripe for disposition. For reasons that follow, Counts I and II of the Amended Complaint will be dismissed in part.[1] Counts III, V, VI, and VII will be dismissed in their entirety. Count IV will not be dismissed.

## II.    BACKGROUND

### A.    The Parties

Plaintiff Robert D. Sayre is a lawyer and resides at 85 Mt. Pleasant Road, Bryn Mawr, Pennsylvania. (Doc. No. 22 ¶ 1.) Defendant Customers Bank is a Pennsylvania state chartered bank and a wholly owned subsidiary of Customers Bancorp, Inc., a Pennsylvania corporation with an office located at 1501 N. Broad Street, Suite 20, Philadelphia, Pennsylvania. (Id. ¶ 2.)

---

[1] In Counts I and II, Plaintiff alleges that Defendant violated the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 Pa. Stat. Ann. §§ 101-605, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 71 Pa. Stat. Ann. 201-1 to -9.3, by collecting from Plaintiff the following: (1) $2,934 in attorney's fees; (2) a $535 appraisal fee; and (3) payments on Plaintiff's mortgage loan that Plaintiff claims he satisfied in June 2010 by his "automatic right to set off." (Doc. No. 22 ¶¶ 55-66.) As discussed below, the Court holds that Plaintiff's mortgage was not satisfied by his "automatic right to set off." Rather, Defendant continued to owe payments on the mortgage until he satisfied it when the mortgaged property was sold in June 2013. Therefore, as will be discussed infra, the Court will dismiss Plaintiff's allegations in Counts I and II that Defendant violated Act 6 and the UTPCPL by collecting mortgage payments after Plaintiff exercised his claimed setoff right in June 2010. The Court will not dismiss Plaintiff's claims in Counts I and II that Defendant's collection of attorney and appraisal fees violated Act 6 and the UTPCPL.

## B. The Mortgage Loan Transaction Between Plaintiff and ISN Bank

Plaintiff was employed by ISN Bank, a New Jersey state chartered bank, as Vice President and Counsel from June 20, 2005 through March 31, 2010. (Id. ¶¶ 5, 9.) While employed at ISN Bank, Plaintiff purchased on September 19, 2007 real property located at 2219 Gaul Street, Philadelphia, Pennsylvania (the "Property"). (Id. ¶ 3.) In connection with the purchase, Plaintiff entered into a mortgage loan transaction with ISN evidenced by a promissory note (the "Note") and a mortgage (the "Mortgage"). (Id. ¶¶ 4, 6; Doc. No. 44, Exs. A, B.) In accordance with the terms of the Note and Mortgage, ISN made a $98,000 loan to Plaintiff secured by a first priority mortgage lien on the Property. (Doc. No. 22 ¶ 6, 7; Doc. No. 44, Exs. A, B.)

## C. Plaintiff's Severance Agreement and Termination of Employment

On February 7, 2008, Benjamin S. Friedman, President of ISN, sent Plaintiff an e-mail memorializing ISN's agreement to provide Plaintiff with a minimum of six months severance pay in the event Plaintiff is terminated without cause. (Doc. No. 22 ¶ 11; Doc. No. 44, Ex. C.) On May 12, 2008, Plaintiff and Karl A. Towns, the new President of ISN, executed an agreement formalizing Plaintiff's severance terms (the "Severance Agreement"). (Doc. No. 22 ¶ 12; Doc. No. 44, Ex. D.) In relevant part, the Severance Agreement states that "in the event [Plaintiff] is terminated without cause, [Plaintiff] shall be entitled to six months continued salary at the same level that [Plaintiff] receive[s] at the present time." (Doc. No. 44, Ex. D.) The Severance Agreement defines "cause" as follows:

> "Cause" shall mean a determination by a majority of the Management that Employee: (i) has misappropriated, stolen or embezzled funds or property of [ISN] or an affiliate of [ISN] or secured or attempted to secure personally any profit in connection with any transaction entered into on behalf of [ISN] or any affiliate of [ISN]; (ii) has, notwithstanding not less than thirty (30) days' prior written notice from Management, willfully and persistently failed to perform (other than by reason of illness or temporary disability, regardless of whether such

temporary disability is or becomes a permanent disability, or by reason of vacation or approved leave of absence) his material duties; (iii) has been convicted of, or entered a plea of "nolo contendere" to, a felony (other than traffic violations); or (iv) has willfully or through gross negligence violated or breached any material provision of this Agreement, any material law or regulation or any written policy or code of business conduct or ethics of [ISN] to the material detriment of [ISN] or any affiliate of [ISN] or its business. For purposes of this definition, no act or failure to act, on the part of [Plaintiff], shall be considered "willful" unless it's done, or omitted to be done, by [Plaintiff] in bad faith or with gross negligence. Any act, or failure to act, based upon authority given pursuant to a resolution duly adopted by Management or based upon the advice of counsel for [ISN] shall be conclusively presumed to be done, or omitted to be done, by [Plaintiff] in good faith and in the best interests of [ISN]. The cessation of employment of [Plaintiff] shall not be deemed to be for Cause unless and until there shall have been delivered to [Plaintiff] a copy of [a] resolution, duly adopted by the affirmative action vote of not less than a majority of the membership of the Management at a meeting of the Management called and held for such purpose (after reasonable notice is provided to [Plaintiff] and [Plaintiff] is given an opportunity, together with counsel, to be heard before Management), finding that, in the good faith opinion of Management, [Plaintiff] was guilty of the conduct set forth in the clauses above, and specifying in writing the particulars thereof in detail.

(Id.)

In February 2010, Plaintiff informed ISN that he had cancer and would be required to undergo surgery and follow-up treatment. (Doc. No. 22 ¶ 12.) On March 30, 2010, a few days before a scheduled surgery, ISN advised Plaintiff that his employment with ISN would be terminated at the close of business on March 31, 2010. (Id. ¶ 14.) On March 31, 2010, ISN sent Plaintiff a letter terminating his employment. (Id. ¶ 15; Doc. No. 44, Ex. E.) At the time of his termination, Plaintiff's base salary was $127,500. (Doc. No. 22 ¶ 20.)

**D.  Plaintiff Attempts to Set Off His Mortgage Debt; ISN Is Acquired by Customers Bank**

On June 24, 2010, Plaintiff sent a letter to ISN, advising that he would exercise his rights under federal and state law, including his right to setoff the remaining balance due on his mortgage loan by the $63,750 payment he claims ISN owed to him under his Severance Agreement. (Id. ¶¶ 22, 23; Doc. No. 44, Ex. F.) Plaintiff included with this letter a check for

$9,295.00, which he calculated to be the amount he owed ISN after the setoff. (Id.) Plaintiff stated in the letter that this check, combined with the setoff, represented payment in full of the Note and Mortgage, and he requested that ISN file a notice that the Mortgage was satisfied as required by Pennsylvania's Mortgage Satisfaction Act. (Doc. No. 22 ¶¶ 22, 23; Doc. No. 44, Ex. F.) ISN apparently did not agree that Plaintiff was owed a $63,750 severance payment, and declined to follow Plaintiff's request to file the mortgage satisfaction notice. (Doc. No. 22 ¶ 24.) Nevertheless, Plaintiff stopped making Mortgage payments to ISN in June 2010. (Id. ¶ 25.) ISN thereafter reported Plaintiff's Mortgage loan as past due to various consumer reporting agencies. (Id. ¶ 26.)

In September 2010, Defendant Customers Bank acquired the assets of ISN. (Id. ¶ 27.) Defendant also reported Plaintiff's Mortgage loan as past due to various consumer reporting agencies. (Id. ¶ 29.)

On September 27, 2011, Defendant sent Plaintiff a letter notifying him that he was in default under the terms of the Note. (Id. ¶ 30; Doc. No. 44, Ex. G.) Defendant attached to this letter an "Act 6/91 Notice"[2] informing Plaintiff that he could cure the default by paying $14,900.55, which was the total amount past due plus interest and fees. (Id. ¶ 31; Doc. No. 44, Ex. G.) This sum included a $385 appraisal fee. (Id. ¶ 33; Doc. No. 44, Ex. G.)

On October 25, 2011, Plaintiff sent a letter to Defendant requesting that Defendant comply with the FDCPA, including a demand that Defendant provide evidence of its purported ownership of the Mortgage loan. (Id. ¶ 36; Doc. No. 44, Ex. G.) In December 2011, Plaintiff

---

[2] An "Act 6/91 Notice" is a notice that, pursuant to Pennsylvania law, a mortgagee must send to a mortgagor at least thirty days before initiating foreclosure proceedings. The notice informs the mortgagor of the mortgagee's intention to foreclose, and advises the mortgagor of the ability to cure the default through the Pennsylvania Homeowner's Emergency Mortgage Assistance Program. See 35 Pa. Stat. Ann. § 1680.403c; 41 Pa. Stat. Ann. § 403.

paid Defendant the amounts that Defendant asserted were due on the Mortgage because Plaintiff was advised that he would be unable to obtain a mortgage or any additional credit as long as the Mortgage was reported as past due. (Doc. No. 22 ¶ 39.) As a result, Defendant did not commence a foreclosure suit against Plaintiff. (Id. ¶ 40.) On December 9, 2011, Plaintiff sent Defendant another letter demanding that Defendant comply with the FDCPA. (Id. ¶ 41; Doc. No. 44, Ex. K.)

In the spring of 2013, Plaintiff entered into an agreement of sale for the Property and closing was scheduled for late June 2013. (Doc. No. 22 ¶ 42.) On June 25, 2013, Defendant provided a Payoff Request Letter (misdated June 25, 2012) seeking payment of, among other sums, the remaining mortgage balance of $54,624.64, attorney's fees of $2,934.01, and an appraisal fee of $535. (Id. ¶ 43; Doc. No. 44, Ex. L.) On or about June 27, 2013, Plaintiff advised Defendant that its claim for attorney's fees was in violation of federal and state laws and subjected Defendant to liability. (Doc. No. 22 ¶ 45.) Plaintiff also advised Defendant that the claim for appraisal fees was not authorized under the Note, Mortgage, or other loan documents. (Id. ¶ 46.) Defendant nevertheless refused to retract its claim for the attorney and appraisal fees. (Id. ¶¶ 47, 48.) In order to consummate the sale of the Property on July 2, 2013, Plaintiff paid the full amount demanded by Defendant. (Id. ¶ 53.)

### E.     Plaintiff Files the Instant Lawsuit

On May 21, 2014, Plaintiff filed a Complaint against Defendant in the Court of Common Pleas of Philadelphia County alleging violations of state law and the federal FDCPA. (Doc. No. 1 ¶¶ 1, 2.) On June 16, 2014, Defendant removed the action to this Court pursuant to 15 U.S.C. § 1692k(d), which gives a federal court subject matter jurisdiction over claims alleging violations

of the FDCPA.  (Id. ¶ 5.)  On June 16, 2014, Defendant filed an Answer with Affirmative Defenses.  (Doc. No. 3.)

After a series of filings, the Court authorized Plaintiff to file an Amended Complaint, which he did.  (Doc. No. 22.)  As noted above, on October 27, 2014 Defendant filed a Motion to Dismiss the Amended Complaint.  (Doc. No. 26.)  Defendant's Motion is presently before the Court for a decision.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken

into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint

and evaluating whether all of the elements identified in part one of the inquiry are sufficiently

alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show"

such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at

679.  The "plausibility" determination is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  Id.

## IV.     ANALYSIS

As noted above, in the Amended Complaint Plaintiff asserts claims against Defendant in

seven counts: (Count I) violation of the Pennsylvania Loan Interest and Protection Law ("Act

6"), 41 Pa. Stat. Ann. §§ 101-605; (Count II) violation of the Pennsylvania Unfair Trade

Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 to -9.3; (Count

III) violation of the Pennsylvania Mortgage Satisfaction Act, 21 Pa. Stat. Ann. §§ 721-1 to -12;

(Count IV) Breach of Contract; (Count V) Setoff; (Count VI) Breach of the Duty of Good Faith

and Fair Dealing; and (Count VII) violation of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 (2013).

### A.     The Act 6 Claim (Count I)

In Count I, Plaintiff alleges that Defendant violated the Pennsylvania Loan Interest and

Protection Law ("Act 6"), 41 Pa. Stat. Ann. §§ 101-605, by collecting from Plaintiff the

following: (1) $2,934 in attorney's fees; (2) a $535 appraisal fee; and (3) payments on Plaintiff's

Mortgage that was satisfied by his "automatic right to set off" his Mortgage debt by the

severance payment that he claims ISN owed him. (Doc. No. 22 ¶¶ 58, 59, 62.) For reasons that

follow, the Court will not dismiss Plaintiff's claims that Defendant's collection of attorney and

appraisal fees violated Act 6, but will dismiss Plaintiff's claim that Defendant's collection of

Mortgage payments violated Act 6.

### 1. Plaintiff's allegation that Defendant violated Act 6 by collecting attorney's fees will not be dismissed

Plaintiff contends that Defendant violated Act 6 by collecting $2,934.01 in attorney's fees

from him "prior to commencement of foreclosure or other legal action." (See Doc. No. 22 ¶¶ 55-

62.) He argues that this violated § 406 of Act 6, which regulates attorney's fees that a residential

mortgage lender may contract for or receive from a mortgage debtor. Section 406 reads as

follows:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
>
> (1) Reasonable fees for services included in actual settlement costs.
>
> (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.
>
> (3) Prior to commencement of foreclosure or other legal action attorney's fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 Pa. Stat. Ann. § 406.

A leading case interpreting § 406 is In re Schwartz, 68 B.R. 376 (Bankr. E.D. Pa. 1986).

In Schwartz, the court described the parameters of § 406 as follows:

Act 6 is an attempt to regulate the process by which the lender recovers under its mortgage obligation. Within this context, through [§ 406], the legislature balanced the competing interests and established certain bright line rules for determining a residential mortgagee's right to pass on its legal expenses to the borrower. First, before a 30 day notice is sent [pursuant to § 403 of Act 6] (and during the 30 day period), no legal expenses whatsoever may be charged. This initial period is designed to minimize costs to the borrower and maximize the potential for a cure of the default. If the borrower has not cured the default within the 30 day period, reasonable and actually incurred legal fees may be assessed, but not in excess of $50.00 during the period prior to commencement of foreclosure or other legal action. During this second period, the legislature recognized that some legal work would have to be done to prepare a case for court, but strictly limited the amount of legal expense it considered legitimate prior to foreclosure. Finally, if foreclosure or other equivalent action has been instituted, reasonable fees may be assessed.

* * *

In short, to the extent there may be "anomalies" in the statute which may prevent a lender from passing on to the borrower all the attorney's fees it has incurred, they result from clear choices the legislature has made.

In re Schwartz, 68 B.R. at 383.[3]

As noted above, Plaintiff asserts that Defendant violated § 406 by collecting from him $2,934.01 in attorney's fees "prior to commencement of foreclosure or other legal action." (Doc. No. 22 ¶¶ 55-62.) Defendant does not contend that it had commenced foreclosure procedures. Rather, Defendant asserts that it had commenced "other legal action" against Plaintiff, and therefore was permitted by the terms of Act 6 to recover attorney's fees that are "reasonable and actually incurred." (Doc. No. 26-2 at 12-14.) Defendant describes the "other legal action" it commenced as follows:

[Defendant] employed the services of an attorney to engage in other forms of action, short of foreclosure, to enforce its rights under the mortgage. This is the "other legal action" referred to at § 406(c) of Act 6. Specifically, the attorney's fees charged to [Plaintiff] at the time the loan was paid off are actual out-of-

---

[3] See also Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 431 (E.D. Pa. 2002) ("The Court agrees with the analysis [in Schwartz]. Before a thirty day notice [pursuant to § 403] is sent, no legal expenses whatsoever may be charged. After the thirty day period, reasonable and actually incurred legal fees may be assessed, but not in excess of $50. If a foreclosure action is commenced, reasonable fees actually incurred may be assessed.").

pocket expenses incurred by [Defendant] due to [Plaintiff's] insistence that the mortgage was paid off because ISN owed him money for a severance package.

(Id. at 13-14.)

As explained by the court in Schwartz, the term "other legal action" in § 406 "has a distinct meaning and purpose under Pennsylvania law." 68 B.R. at 382.

> It refers to the different forms of legal action under state law which a mortgagee may employ to enforce its rights against the mortgagor. In Pennsylvania, a mortgage is a pledge of an interest in real property as security for payment of an indebtedness, usually created by a separate note or bond. The note and mortgage, although separate instruments, are securities for the same debt. E.g., Girard Trust Co. v. City of Pennsylvania, 369 Pa. 499, 87 A.2d 277 (1952); 2 Ladner on Conveyancing in Pennsylvania § 12.02 (1979); Note, Mortgage Foreclosure in Pennsylvania, 85 Dickinson L. Rev. 275, 275-76 (1981). As a result, a lender may elect to bring a legal action on the indebtedness either by suing in mortgage foreclosure or by suing in assumpsit. See, e.g., 22 Standard Pennsylvania Practice 2d, Enforcement of Real Property Mortgages § 121.3 (1984). Thus, the reference to other legal actions in Act 6 refers to the other forms of action a mortgagee may employ to enforce its state law rights under the mortgage. The legislature used the term to make clear that the procedural form of the foreclosure proceedings would be irrelevant; regardless of the form, the proceedings would have to be preceded by a notice of intention to foreclose and the limitations on the collection of attorney's fees would apply.

Id.

This interpretation of § 406 is persuasive.[4] In the context of Act 6, "other legal action" refers only to "legal proceedings to enforce a mortgage obligation in the manner of a foreclosure action." In re Vitelli, 93 B.R. 889, 897 (Bankr. E.D. Pa. 1988) (citing Schwartz). In

---

[4] In Bennet v. Seave, the Supreme Court of Pennsylvania agreed with the court's interpretation in Schwartz of the term "other legal action" in § 406 of Act 6:

> We agree with the observation of the U.S. Bankruptcy Court for the Eastern District of Pennsylvania in In re Schwartz, 68 B.R. 376 (1986) that the reference to other legal actions in Act 6 refers to the other forms of action a mortgagee may employ to enforce its rights under the mortgage and that regardless of the form utilized, the proceedings would have to be preceded by a notice of intention to foreclose.

554 A.2d 886, 891 n.4 (Pa. 1989).

Pennsylvania, a mortgagee may institute foreclosure either by "suing in mortgage foreclosure or by suing in assumpsit." In re Schwartz, 68 B.R. at 382. In either case, a lawsuit must be filed. In the present case, there is no claim that Defendant filed a lawsuit, either in mortgage foreclosure or in assumpsit. Rather, Defendant engaged in action "short of foreclosure" and incurred attorney's fees due to Plaintiff's "insistence that the mortgage was paid off because ISN owed him money for a severance package." (Doc. No. 26-2 at 14.) This reason for incurring attorney's fees does not constitute "other legal action" within the context of Act 6.

Moreover, Act 6 provides that "no attorney's fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act." 41 Pa. Stat. Ann. § 406(3). At this stage of the case, the Court cannot determine whether Defendant sent such notice, and if so, when.

For the reasons discussed, Plaintiff has stated a plausible claim that Defendant violated Act 6 by collecting attorney's fees from him prior to commencement of foreclosure proceedings or other legal action. Accordingly, Defendant's Motion to Dismiss Plaintiff's allegation that collecting these fees violated Act 6 will be denied.

### 2. Plaintiff's allegation that Defendant violated Act 6 by collecting an appraisal fee will not be dismissed

As noted above, Defendant charged Plaintiff an appraisal fee on two separate occasions. First, when Plaintiff defaulted on the Mortgage in September 2011, Defendant charged Plaintiff a $385 appraisal fee as part of the total amount Plaintiff was required to pay to cure the default. (Doc. No. 44, Ex. G.) Second, when Plaintiff sold the Property in the summer of 2013, Defendant included a $535 appraisal fee in the June 25, 2013 Payoff Request letter that detailed the total amount Plaintiff was required to pay to satisfy the Mortgage. (Doc. No. 44, Ex. L.) Plaintiff paid both appraisal fees. (Doc. No. 22 ¶¶ 39, 53.)

Plaintiff alleges that Defendant was not authorized to collect the $535 appraisal fee because neither the Mortgage nor the Note included it as a permissible fee in the event that the Property was sold. (Doc. No. 22 ¶ 57.) Plaintiff does not challenge the collection of the earlier $385 appraisal fee. Plaintiff claims, however, that since neither the Mortgage nor the Note authorized the $535 charge, the remedy provided in § 502 of Act 6 can be invoked.[5] Section 502 provides in relevant part as follows:

> A person who has paid . . . charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess . . . charges in a suit at law against the person who has collected such excess . . . charges.

41 Pa. Stat. Ann. § 502.

Plaintiff does not point to any statute—Act 6 or otherwise—that prohibits the collection of appraisal fees. However, the Mortgage and Note are contracts, the breach of which is a violation of law. If Defendant was not authorized to collect the appraisal fee, then Plaintiff has stated a plausible claim that he is entitled to the remedy provided in § 502 of Act 6, which allows a plaintiff to recover triple the amount of fees paid if those fees are "prohibited or in excess of those allowed by . . . law." 41 Pa. Stat. Ann. § 502.

A review of the Mortgage and Note shows that Defendant was not authorized to collect the $535 appraisal fee. The Note is silent on appraisal fees, but a paragraph in the Mortgage authorizes Defendant to collect such a fee, but only in the event of a default. The relevant

---

[5] In the Motion to Dismiss, Defendant seems to misapprehend Plaintiff's allegation. Defendant's argument addresses the propriety of the collection of the $385 appraisal fee, not the collection of the $535 appraisal fee that Plaintiff alleges violated Act 6. (See Doc. No. 26-2 at 12-14.) As noted, Plaintiff does not allege that Defendant's collection of the $385 appraisal fee was illegal.

paragraph is set forth in the "Rights and Remedies on Default" section of the Mortgage, and

reads as follows:

> **RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:
>
> * * *
>
> **Attorney's fees; Expenses.** . . . .Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, . . . appraisal fees . . . .

(See Doc. No. 44, Ex. B at 9-11.)

Because the paragraph authorizing Defendant to collect appraisal fees is found within the

"Rights and Remedies on Default" section, the Mortgage authorizes Defendant to collect

appraisal fees only upon Plaintiff's default. The $385 appraisal fee was charged in connection

with Plaintiff's default on the Mortgage in September 2011, and thus was permissible. However,

Defendant did not charge the $535 appraisal fee in connection with a default. It was charged as

part of the sale of the Property. There is nothing in the Amended Complaint or in Defendant's

Brief indicating that Plaintiff's Mortgage was in default in June 2013 when Defendant provided

the Payoff Request Letter that included the $535 appraisal fee. Rather, this fee simply was

included in the total amount Plaintiff owed to Defendant to pay off the Mortgage after Plaintiff

sold the Property.

For these reasons, Plaintiff has stated a plausible claim that neither the Mortgage nor the

Note authorized Defendant to collect the $535 appraisal fee, and that Plaintiff is therefore

entitled to the remedy provided in § 502 of Act 6. Accordingly, Defendant's Motion to Dismiss

this allegation will be denied.

### 3. Plaintiff's allegation that Defendant violated Act 6 by collecting Mortgage payments will be dismissed

Plaintiff alleges that Defendant violated Act 6 by collecting Mortgage payments because the Mortgage had been satisfied on June 24, 2010 when Plaintiff exercised his "automatic right to set off" his Mortgage debt by the $63,750 severance payment that he claims ISN owed him. (Doc. No. 22 ¶ 62.) Apparently, neither Defendant nor ISN agreed that Plaintiff was owed the $63,750 severance payment. Defendant and ISN refused to honor Plaintiff's claimed setoff right and therefore did not mark Plaintiff's Mortgage as satisfied. Instead, Defendant and ISN continued to demand Mortgage payments from Plaintiff. Plaintiff now sues Defendant for collecting payments on a Mortgage that Plaintiff claims had been satisfied.[6]

In his Brief in Opposition to Defendant's Motion to Dismiss, Plaintiff argues as follows:

> [I]t is clear that the Plaintiff had the right to off-set his mortgage obligation to ISN with the obligation owed to him by ISN under his employment contract on June 24, 2010. Once the Plaintiff submitted the set-off and his check in the amount of Nine Thousand Two Hundred Ninety-Five Dollars ($9,295.00), the set-off of the obligations occurred by operation of law. At that moment, the Plaintiff owed nothing further to ISN. This result is consistent with Pennsylvania law going back to the Defalcation Act of 1705, and the common law coming thereafter. The Plaintiff was not required to bring suit in order for the set-off to occur. Pennsylvania courts have long held that principles should be embraced which prevent multiplicity or circuity of action.

---

[6] As described above, Plaintiff apparently did not make Mortgage payments between June 24, 2010, when he claims the Mortgage was satisfied by his "automatic right to set off," and December 2011, when he cured his default by paying Defendant the total amount past due, plus interest and fees. (See Doc. No. 22 ¶¶ 25, 39.) Between December 2011, when Plaintiff cured his default, and July 2013, when Plaintiff sold the Property, it appears that Plaintiff made regular Mortgage payments to Defendant. Although the Amended Complaint does not clearly indicate whether Plaintiff made these regular Mortgage payments, the Court infers that he did because (1) Plaintiff alleges in the Complaint that Defendant "violated Act 6 by collecting monies under a loan that had been previously satisfied," and (2) Defendant apparently did not initiate foreclosure proceedings against Plaintiff during this time. (See Doc. No. 22 at ¶¶ 3-54, 62 (emphasis added).) Eventually, Plaintiff satisfied the Mortgage in full when he sold the Property and paid to Defendant the amount of money Defendant demanded in the June 25, 2013 Payoff Request Letter. (See Doc. No. 22 ¶ 53; Doc. No. 44, Ex. L.)

(Doc. No. 29-1 at 19.)

The Court does not agree with Plaintiff's position. Plaintiff claims that he was entitled to set off his Mortgage debt by a severance payment that neither ISN nor Defendant agreed he was owed. Plaintiff cites no authority,[7] and the Court can find none, that stands for the proposition

---

[7] The cases Plaintiff cites in his Brief in Opposition to Defendant's Motion to Dismiss do not support his position that he can unilaterally set off his Mortgage debt by the disputed severance payment. Plaintiff quotes sections of these cases at length, but does not explain how they support his position in this case. (See Doc. No. 29-1 at 17-19.) The Court has conducted its own review and finds these cases distinguishable. In the present case, the amount Plaintiff claimed as a setoff was in dispute. In the cases Plaintiff cites, however, that amount was not disputed.

In Commonwealth v. Clarkson, 1 Rawle 291 (Pa. 1829), a prothonotary collected fees due to two sheriffs during his time in office, and the sheriffs collected fees due to the prothonotary during their time in office. All parties agreed to set off the amounts they owed each other by the fees they collected on behalf of each other. The only issue for the court to decide was whether these fees were taxable, since under a Pennsylvania law fees were only taxable if they "were received by the officer during his [time] in office." Id. at 292. The court determined that set off "operate[s] on the rights of parties before action brought, or an act done by either of them." Id. at 293. Therefore, "the fees received by the sheriff[s] were virtually in the hands of [the prothonotary] the instant that he and the sheriff[s] became reciprocally holders of each other's funds; and, as this occurred while [the prothonotary] was in office, the fees in question are subject to taxation." Id. at 293-94.

In Ahl v. Rhoads, 84 Pa. 319 (1877), defendants sought to set off a mortgage debt it owed to plaintiff by a tort claim it had against plaintiff. Id. at 325-26. The court explained that "the right of a defendant may be regarded as established to set off against a plaintiff's demand any damages capable of liquidation, and for which an independent action ex contractu could be maintained." Id. at 325. However, this right does not allow a defendant to introduce evidence of tort damages to set off a plaintiff's breach of contract claim. "A debt, or the damages which can be set off as an independent counterclaim, must be such as a jury can find and liquidate in the ordinary way, just as if the defendant were a plaintiff suing in debt, assumpsit, or covenant." Id. at 326. The court therefore did not allow defendants to introduce evidence of tort damages to set off plaintiff's contract claim regarding a mortgage debt, reasoning that it would unnecessarily complicate the proceedings. Id.

In Murray v. Williamson, 3 Binn. 135 (1810), a defendant indebted to a decedent wanted to set off the debt he owed to the decedent's estate by an amount that the decedent owed him. The court permitted the defendant to do this, and reasoned as follows: "It would be against equity, that the defendant should be compelled to pay this debt; when there is a debt due to him in equity from the plaintiff's intestate. It not only subjects him to the expense and delay of a new

that a debtor can unilaterally claim the right to set off a debt by a disputed amount. As a matter of first impression, the Court declines to hold that a debtor may set off a debt by an amount that is disputed by a creditor.

Accordingly, Plaintiff's Mortgage was not satisfied on June 24, 2010 by his "automatic right to set off." He therefore fails to state a claim that Defendant's collection of regular payments on the Mortgage violated Act 6, and this allegation will be dismissed.

### B.    The UTPCPL Claim (Count II)

In Count II, Plaintiff alleges that Defendant violated the "catch-all" provision[8] of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. 201-1 to -9.3, by demanding and collecting from Plaintiff the following: (1) $2,934 in attorney's fees barred by Act 6; (2) a $535 appraisal fee not authorized by the Note or Mortgage; and (3) regular payments on Plaintiff's Mortgage that was satisfied by his "automatic right to set off" his Mortgage debt by the severance payment that he claims ISN owed him. (Doc. No. 22 ¶¶ 63-66.) The "catch-all" provision of the UTPCPL makes it unlawful to engage in "any other

---

action, but possibly to the loss of part of his demand, in case of a deficiency of assets. I shall gladly embrace every principle which prevents multiplicity or circuity of action." Id. at 137.

In Pennsylvania Nat'l Bank & Trust Co. v. CCNB Bank, N.A., 667 A.2d 1151 (Pa. Super. 2005), a bank set off a depositor's account balance against money the depositor owed the bank. The court held that the bank's right to set off the account balance takes priority over other creditors' rights to the funds in the account. Id. at 1154.

None of these cases support Plaintiff's claim that he could unilaterally set off his Mortgage debt by the severance payment that neither ISN nor Defendant agreed he was owed. As noted, in each case cited the amount applied to set off the debt was not in dispute. Accordingly, they do not support Plaintiff's position.

[8]    In the Amended Complaint, Plaintiff does not identify a specific provision of the UTPCPL that he claims Defendant violated. In his Brief in Opposition to Defendant's Motion to Dismiss, though, he argues that Defendant violated the "catch-all" provision of the UTPCPL. (Doc. No. 29-1 at 15-16.)

fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(xxi).  Plaintiff claims that Defendant engaged in deceptive conduct in violation of the UTPCPL by demanding and collecting these sums because Defendant knew or should have known that it was not authorized to do so under the Mortgage, Note, or applicable law.  (Doc. No. 22 at 50-51.)

Defendant has moved to dismiss Count II, arguing that Plaintiff fails to "allege 'with particularity the [UTPCPL] elements necessary to support a violation.'"  (Doc. No. 26-2 at 17 (quoting Wenglicki v. Tribeca Lending Corp., Civ. No. 07-4522, 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009)).)[9]  For reasons that follow, the Court will not dismiss Plaintiff's allegation that Defendant's demand for and collection of the attorney's fees and appraisal fee violated the UTPCPL, but will dismiss Plaintiff's allegation that Defendant's demand for and collection of Mortgage payments violated the UTPCPL.

---

[9]  In the section of its Motion to Dismiss discussing Plaintiff's UTPCPL claim, Defendant also argues as follows:

> Evidently, Sayre is alleging that Customers by demanding payment of these amounts has violated the Fair Credit Extension Uniformity Act, [73 Pa. Stat. Ann. § 2270.1 et seq.].  The FCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts."  Since the FCEUA does not provide individuals with the right to institute a private causes of action for violations [of the FCEUA, they] must use [73 Pa. Stat. Ann. § 201-9.2], the remedial provision of the UTPCPL to obtain relief.

(Doc. No. 26-2 at 15.)

Defendant goes on to state that the FCEUA excludes from its definition of "debt" a purchase money mortgage on real estate.  (Doc. No. 26-2 at 16.)  Defendant argues that Plaintiff's Mortgage was a purchase money mortgage on real estate, and therefore Defendant's efforts to collect on it cannot have violated the FCEUA.  (Id.)  However, Plaintiff does not make a claim that Defendant violated the FCEUA.  Plaintiff only claims that Defendant violated the UTPCPL.  Defendant's argument about the FCEUA is therefore without merit.

1. **Plaintiff's allegation that Defendant engaged in deceptive conduct in violation of the UTPCPL by demanding and collecting attorney's fees and the appraisal fee will not be dismissed**

In <u>Seldon v. Homes Loan Servs.</u>, 647 F. Supp. 2d 451, 468-70 (E.D. Pa. 2009), the court described the elements of a claim of deceptive conduct under the "catch-all" provision of the UTPCPL[10]:

---

[10] In <u>Belmont v. MB Investment Partners</u>, the Court of Appeals discussed the standard of liability under the UTPCPL's "catch-all" provision. 708 F.3d 470, 498 (3d Cir. 2013). The court in <u>Belmont</u> noted that the standard was in "flux" in the wake of a 1996 amendment to the UTPCPL that "expanded the catch-all provision to cover 'deceptive' as well as fraudulent conduct." <u>Id.</u> Some courts continued to require plaintiffs to plead the elements of fraud to state a claim under the catch-all provision of the UTPCPL. <u>See, e.g.</u>, <u>Ross v. Foremost Ins. Co.</u>, 998 A.2d 648 (Pa. Super. 2010); <u>Colaizzi v. Beck</u>, 895 A.2d 36 (Pa. Super. 2006); <u>Morilus v. Countrywide Home Loans, Inc.</u>, Civ. No. 07-0900, 2007 WL 1810676, at *5 (E.D. Pa. June 20, 2007) ("In order for plaintiffs to recover, the unfair or deceptive acts alleged must meet all the requirements for common law fraud, which include 'a material representation of an existing fact, scienter, justifiable reliance on the misrepresentation, and damages.'" (quoting <u>Booze v. Allstate Ins. Co.</u>, 750 A.2d 877, 880 (Pa. Super. 2000))). Other courts held that the 1996 amendment's addition of "deceptive conduct" meant that a plaintiff was no longer required to plead the elements of fraud. These courts held that an allegation of deceptive conduct was sufficient to state a claim. <u>See</u> <u>Bennet v. A.T. Masterpiece Homes at Broadsprings, LLC</u>, 40 A.3d 145, 151-56 (Pa. Super. 2012); <u>Schnell v. Bank of New York Mellon</u>, 828 F. Supp. 2d 798, 806-07 (E.D. Pa. 2011); <u>Seldon v. Homes Loan Servs.</u>, 647 F. Supp. 2d 451, 468-70 (E.D. Pa. 2009); <u>Commonwealth v. Percudani</u>, 825 A.2d 743, 747 (Pa. Commw. Ct. 2003).

In the absence of a ruling by the Pennsylvania Supreme Court, the court in <u>Belmont</u> was "called upon to predict what interpretation of the 'deceptive conduct' standard the Pennsylvania Supreme Court would adopt." 708 F.3d at 498 The court stated that "[i]t appears that a UTPCPL claim based on deceptive conduct differs from a claim based on fraudulent conduct in that a plaintiff 'does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b).'" <u>Id.</u> at 498 n.33 (quoting <u>Schnell</u>, 828 F. Supp. 2d at 807). Since <u>Belmont</u>, the Pennsylvania Supreme Court has not ruled on whether proof of the elements of fraud is required to state a claim under the catch-all provision of the UTPCPL. In the absence of a decision by the Pennsylvania Supreme Court, the Third Circuit's opinion in <u>Belmont</u> is binding on this Court. <u>See</u> <u>Gadley v. Ellis</u>, No. 13-17, 2014 WL 3696209, at *5 (W.D. Pa. July 23, 2014) ("[A] district court is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an issue."). Therefore, Plaintiff does not need to plead the elements of fraud to state a claim that Defendant violated the "catch-all" provision of the UTPCPL. An allegation of deceptive conduct is enough.

First, a plaintiff must allege facts showing a "deceptive act," that is, "conduct that is likely to deceive a consumer acting reasonably under similar circumstances." Black's Law Dictionary 455 (8th ed. 2004); see also In re Patterson, 263 B.R. 82, 94 (Bankr. E.D. Pa. 2001) (defining deceptive act as "'the act of intentionally giving a false impression'" or "'a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it'") (quoting Black's Law Dictionary 413 (7th ed. 1999)). Next, the plaintiff must allege justifiable reliance, in other words "that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [defendant's] misrepresentation" or deceptive conduct. [Hunt v. U.S. Tobacco Co., 538 F.3d 217, 223 n.14 (3d Cir. 2008)]. Finally, the plaintiff must allege that this justifiable reliance caused ascertainable loss. 73 Pa. Stat. Ann. § 201-9.1(a).

Seldon, 647 F. Supp. 2d at 470. Pursuant to the standard set in Seldon, Plaintiff has stated a deceptive conduct claim under the UTPCPL with regard to Defendant's demand for and collection of $2,934 in attorney's fees and the $535 appraisal fee.

First, Plaintiff alleges facts showing a deceptive act with regard to Defendant's demand for $2,934 in attorney's fees and the $535 appraisal fee. As noted above, Plaintiff has plausibly alleged that Act 6 barred Defendant from collecting attorney's fees, and that neither the Note nor Mortgage authorized the collection of the $535 appraisal fee. Plaintiff claims that Defendant demanded these fees because it was not aware of applicable laws and did not adequately train its employees. (Doc. No. 22 ¶¶ 50-52.) These allegations are sufficient to show a "deceptive act" because they point to "false representation[s] made knowingly or recklessly with the intention" that Plaintiff would rely on them. See Seldon, 647 F. Supp. 2d at 470 (quoting Patterson, 263 B.R. at 94).

Second, Plaintiff has plausibly alleged that he justifiably relied on Defendant's representations that he owed $2,934 in attorney's fees and the $535 appraisal fee. Plaintiff asserts that he paid these sums because Defendant demanded them in its June 25, 2013 Payoff Request Letter. (Doc. No. 22 ¶ 53.)

Third, Plaintiff has plausibly alleged an "ascertainable loss" by claiming that he paid the fees that Defendant demanded.  (Id.)  The payment of these fees constitutes an "ascertainable loss."

For these reasons, Plaintiff has stated a claim that Defendant engaged in deceptive conduct in violation of the UTPCPL with regard to Defendant's demand for and collection of $2,934 in attorney's fees and the $535 appraisal fee.  Consequently, Plaintiff's claim that Defendant violated the UTPCPL by collecting attorney's fees and an appraisal fee will not be dismissed.

> **2.    Plaintiff's allegation that Defendant engaged in deceptive conduct in violation of the UTPCPL by demanding and collecting Mortgage payments will be dismissed**

Plaintiff does not plausibly allege a deceptive act with regard to Defendant's demand for and collection of Mortgage payments.  Plaintiff claims that Defendant demanded Mortgage payments even though it knew the Mortgage was satisfied in June 2010 by Plaintiff's "automatic right to set off."   (Doc. No. 22 ¶ 66.)  As noted above, Plaintiff's Mortgage was not satisfied in June 2010 by an "automatic right to set off."  Rather, Plaintiff continued to owe Mortgage payments until he sold the Property and paid off the Mortgage in July 2013.  Accordingly, Plaintiff fails to allege that Defendant's demand for and collection of Mortgage payments constituted a deceptive act in violation of the UTPCPL.  This allegation will therefore be dismissed.

> **C.    The Mortgage Satisfaction Act (Count III), Breach of Contract (Count IV), Setoff (Count V), and Good Faith and Fair Dealing Claims (Count VI)**

In Counts III, IV, V, and VI of the Amended Complaint, Plaintiff alleges that Defendant violated Pennsylvania's Mortgage Satisfaction Act (Count III), Defendant breached the

Severance Agreement, which is a contract (Count IV), Plaintiff was "entitled to exercise his setoff rights" against Defendant (Count V), and Defendant breached its Duty of Good Faith and Fair Dealing (Count VI).[11]  (Doc. No. 22 ¶¶ 67-71, 74-76.)  For reasons that follow, Plaintiff's Mortgage Satisfaction Act, Setoff, and Breach of the Duty of Good Faith and Fair Dealing claims (Counts III, V, and VI) will be dismissed.  Plaintiff's Breach of Contract claim (Count IV) will not be dismissed.

### 1.    The Mortgage Satisfaction Act claim (Count III) will be dismissed

In Count III, Plaintiff alleges that "[Defendant] violated Pennsylvania's Mortgage Satisfaction Act by failing to satisfy the Mortgage as required by statute despite tender and demand."  (Doc. No. 22 ¶ 68.)  The Mortgage Satisfaction Act, 21 Pa. Stat. Ann. § 721-1 to -12,

---

[11] As a threshold matter, Defendant argues that Plaintiff's Mortgage Satisfaction Act (Count III), Breach of Contract (Count IV), Setoff (Count V), and Breach of the Duty of Good Faith and Fair Dealing (Count VI) claims are barred by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(3)-(13).  (Doc. No. 26-2 at 21-24.)  FIRREA regulates the sale and transfer of assets and liabilities of failed banks.  It mandates that litigants who have claims arising from the actions of financial institutions that were placed under the receivership of the FDIC must exhaust FIRREA's administrative process before pursuing a claim in court.

In the Motion to Dismiss, Defendant argues that Plaintiff's Mortgage Satisfaction Act, Breach of Contract, Setoff, and Breach of the Duty of Good Faith and Fair Dealing claims all relate to ISN's wrongdoing, not Defendant's.  Since ISN went into FDIC receivership before it was acquired by Defendant, Defendant claims that Plaintiff was required to exhaust his administrative remedies under FIRREA before bringing a lawsuit in court, and has not done so.  (Doc. No. 26-2 at 23.)

At the motion to dismiss stage, a "court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice."  2 Moore's Federal Practice § 12.34[2] (3d ed. 2014).  A motion to dismiss is not a pleading, see Fed. R. Civ. P. 7(a), and Defendant makes no argument that its claim is based upon documents incorporated by reference in the pleadings or upon matters that the Court may take judicial notice of.  Accordingly, the Court will not determine at this stage of the case whether Defendant was required to exhaust FIRREA's administrative remedies, and if so, whether he did.  Additional facts will have to be presented by the parties on FIRREA's proscriptions.

requires a mortgagee to file a "satisfaction piece" with the office where the mortgage is recorded when the mortgage has been paid in full.  See 21 Pa. Stat. Ann. § 721-4.  The relevant portion of the Act reads as follows:

> Every mortgagee shall, upon receipt of payment of the entire mortgage obligation and tender of all required satisfaction and recording costs, present for recording in the office where the mortgage is recorded a duly executed satisfaction piece in substantially the form set out in section 5 and acknowledged as provided by law. The satisfaction piece when recorded shall forever thereafter discharge, defeat and release the lien and debt of the mortgage.

Id.

As discussed above, on June 24, 2010 Plaintiff sent a letter to Defendant's predecessor, ISN Bank, informing ISN that he was exercising his right to set off the remaining balance due on his Mortgage loan by the $63,750 he claims ISN owed to him under the Severance Agreement. (Doc. No. 22 ¶¶ 22, 23; Doc. No. 44, Ex. F.)  In the letter, Plaintiff stated that the setoff, combined with the enclosed $9,295.00 check, constituted payment in full of the Mortgage.  (Id.) Plaintiff requested ISN to file the satisfaction piece required by the Mortgage Satisfaction Act. (Id.)  ISN did not agree that Plaintiff was entitled to set off his Mortgage debt and did not file the requested satisfaction piece.  (Doc. No. 22 ¶ 24.)  Plaintiff alleges that Defendant, as ISN's successor, is liable under the Mortgage Satisfaction Act for ISN's failure to file the requested satisfaction piece.  (Id. ¶ 68.)

For the reasons described above, Plaintiff did not pay off his Mortgage on June 24, 2010 when he exercised his claimed "automatic right to set off."  Therefore, ISN was not required to file the requested satisfaction piece.  Accordingly, Plaintiff fails to state a claim that Defendant is liable under the Mortgage Satisfaction Act because its predecessor did not file the satisfaction piece.  Therefore, Count III of the Amended Complaint will be dismissed.

## 2.    The Breach of Contract claim (Count IV) will not be dismissed

In Count IV, Plaintiff claims that Defendant breached the Severance Agreement by failing to pay Plaintiff a $63,750 severance payment. (Doc. No. 22 ¶ 71.) As noted above, Defendant argues that this claim is barred by FIRREA. Defendant makes no additional arguments in support of its Motion to Dismiss this claim. The Court cannot determine whether this claim is barred by FIRREA at this stage of the litigation, and construing the allegations in the light most favorable to Plaintiff, the Breach of Contract claim is sufficiently stated in Count IV.

## 3.    The Setoff claim (Count V) will be dismissed

In Count V, Plaintiff asserts "Setoff" as a separate cause of action, alleging that he was "entitled to exercise his setoff rights." (Doc. No. 22 ¶ 73.) In the Motion to Dismiss, Defendant argues that "Setoff" is not a cause of action, but rather an equitable doctrine. "'The right to setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.'" (Doc. No. 26-2 at 27 (quoting <u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16, 18 (1995) (internal quotation marks and citation omitted)).) Defendant claims therefore that Count V alleging "Setoff" as a separate cause of action should be dismissed. (<u>Id.</u>)

The Court agrees that "Setoff" is not a cause of action. Rather, as Defendant notes, setoff is an equitable doctrine that allows parties to "apply their mutual debts against each other." <u>Strumpf</u>, 516 U.S. at 18. Courts most commonly apply setoff in bankruptcy cases "to adjust the mutual rights and obligations of the parties to reflect the balance between them." <u>See, e.g.</u>, <u>Warrington Market, Inc. v. Fleming Cos., Inc.</u>, Civ. No. 02-719, 2003 WL 22594348, at *1 (E.D. Pa. Oct. 10, 2003). The Court can find no legal precedent supporting Plaintiff's claim that

"Setoff" is a separate cause of action. Accordingly, Count V of the Amended Complaint will be dismissed.

### 4. The Breach of the Duty of Good Faith and Fair Dealing claim (Count VI) will be dismissed

In Count VI, Plaintiff alleges that Defendant breached the Duty of Good Faith and Fair Dealing in the following ways: (1) terminating Plaintiff without cause; (2) failing to pay Plaintiff the amounts required under his Severance Agreement; and (3) collecting sums it knew or should have known were not permissible under both state and federal law. (Doc. No. 22 ¶¶ 75, 76.)

"Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing." Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002); see also Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000) (describing the duty of good faith and fair dealing as "an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action"). Count VI of the Amended Complaint therefore will be dismissed.

### D. The FDCPA Claim (Count VII)

In Count VII, Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et. seq. by (1) illegally charging Plaintiff $2,934.01 in attorney's fees; (2) charging Plaintiff a $535 appraisal fee not authorized under the Note or Mortgage; (3) demanding payment on a mortgage loan that had already been satisfied; (4) failing to provide an accounting, and claiming that May 2010's mortgage payment was unpaid when in fact it was paid off; and (5) failing to provide evidence of Defendant's purported ownership of the loan despite demand. (Doc. No. 22 ¶¶ 77-82.) However, as Defendant notes, the provisions of the FDCPA only apply to "debt collectors" as defined in the Act. (Doc. No. 26-2 at 17-19.)

For reasons that follow, Plaintiff has failed to plausibly allege that Defendant is a "debt collector." Accordingly, Count VII of the Amended Complaint will be dismissed.

The FDCPA "provides a remedy for consumers who are subjected to abusive, deceptive or unfair debt collection practices by debt collectors." Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000). The Act only applies to "debt collectors" as defined in the statute. Id. at 403. It does not apply to every entity that attempts to collect a debt. Id. Section 1692a(6) of the Act defines "debt collector" as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692(a)(6).

As the Court of Appeals for the Third Circuit explained in Pollice,

> The FDCPA's provisions generally apply only to "debt collectors." Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th Cir. 2000). Creditors—as opposed to "debt collectors"—generally are not subject to the FDCPA. See Aubert v. Am. Gen. Fin., Inc., 137 F.3d 979, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act. . . . Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the Act unless they collect under a name other than their own."); Staub v. Harris, 626 F.2d 275, 277 (3d Cir. 1980) ("The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf."); Hon. D. Duff McKee, Liability of Debt Collector to Debtor under the Fair Debt Collection Practices Act, 41 Am. Jur. Proof of Facts 3d 159, at § 3 (1997) ("[I]nterestingly, the term "debt collector" does not include the creditor collecting its own debt.").

225 F.3d at 403.

Here, the Amended Complaint and pertinent exhibits show that Defendant was a creditor who attempted to collect a debt on its own behalf. For this reason, Plaintiff has not shown that

Defendant is a "debt collector" who is subject to the FDCPA's requirements.[12]  See Staub, 626

F.2d at 277 ("The [FDCPA] does not apply to persons or businesses collecting debts on their own

behalf.").

In the Amended Complaint, Plaintiff relies on that fact that Defendant "acquired the

assets of ISN."  (Doc. No. 22 ¶ 27.)  This allegation, however, does not change the fact that

Defendant was attempting to collect its own debt.  In this regard, Plaintiff attached two letters to

the Amended Complaint.  Both letters show Defendant to be the creditor that owned the debt and

was attempting to collect the debt on its own behalf.  The first letter, dated September 27, 2011,

was sent by Defendant's counsel and states the following: "You are indebted to [Defendant]

pursuant to the terms of that certain promissory note dated September 19, 2007 in the principal

sum of $98,000."  (Doc. No. 44, Ex. G.)  The second letter, dated June 25, 2013, was sent by

Defendant itself and lists "the payoff due [Defendant]."  (Doc. No. 44, Ex. L.)

Therefore, Plaintiff has failed to plausibly allege that Defendant is a debt collector subject

to the requirements of the FDCPA.  Count VII of the Amended Complaint will be dismissed.

---

[12] Plaintiff argues that Defendant is considered a "debt collector" under the FDCPA because Defendant acquired Plaintiff's loan while it was in default.  (Doc. No. 29-1 at 20-21.)  In support of this argument, he cites Bailey v. Security Nat'l Servicing Corp., 154 F.3d 384 (7th Cir. 1998).  Bailey is distinguishable from this case.  In Bailey, the defendants did not own the mortgage loan and were not attempting to collect the debt on their own behalf, as Defendant in the present case was attempting to do.  Rather, the defendants in Bailey were hired to service the loan by the company that owned the loan.  Id. at 386.  The court in Bailey held that defendants qualified for an exception to the FDCPA's definition of "debt collector" that applies if the person's collection activity on "any debt owed or asserted to be owed or due another . . . concerns a debt which was not in default at the time it was obtained by such person."  See 15 U.S.C. § 1692a(6)(F)(iii).  As noted above, Defendant in this case was not subject to the FDCPA because it owned the loan and was attempting to collect the debt on its own behalf.  Whether the loan was in default when Defendant obtained it does not affect the fact that Defendant, as the owner of the loan, is not subject to the FDCPA.  Accordingly, Bailey does not support Plaintiff's argument on the FDCPA claim.

## V. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 26) will be granted in part and denied in part. Counts I and II of the Amended Complaint will be dismissed only on the claim that violations occurred when Defendant sought to collect Mortgage payments. Counts III, V, VI, and VII will be dismissed in their entirety. Count IV will not be dismissed. An appropriate Order follows.