IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT D. SAYRE,

                Plaintiff,

    v.

CUSTOMERS BANK,

                Defendant.

CIVIL ACTION
NO. 14-3740

## OPINION

**Slomsky, J.**                                                   **September 16, 2016**

## I.    INTRODUCTION

Plaintiff Robert D. Sayre was employed by ISN Bank, the predecessor of Defendant

Customers Bank, as Vice President and Counsel from June 20, 2005 through March 31, 2010.

(Doc. No. 22 ¶ 9.) Plaintiff brings this lawsuit against Defendant Customers Bank only, claiming

that Customers Bank and its predecessor, ISN Bank, violated certain Pennsylvania laws covering

mortgages. At issue at this point in the litigation is Plaintiff's allegation that Defendant forced

him to pay attorney's fees and an appraisal fee when he sold his residential property, fees

Defendant was not entitled to receive.

In this case, Plaintiff originally filed a seven-count Amended Complaint, alleging the

following claims: (Count I) violation of the Pennsylvania Loan Interest and Protection Law

("Act 6"), 41 Pa. Stat. Ann. §§ 101-605; (Count II) violation of the Pennsylvania Unfair Trade

Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 to -9.3; (Count

III) violation of the Pennsylvania Mortgage Satisfaction Act, 21 Pa. Stat. Ann. §§ 721-1 to -12;

(Count IV) Breach of Contract; (Count V) Setoff; (Count VI) Breach of the Duty of Good Faith

and Fair Dealing; and (Count VII) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (2013).  (Doc. No. 22.)

In a May 29, 2015 Opinion (Doc. No. 45) and Order (Doc. No. 46), this Court dismissed Counts III, V, VI, and VII in their entirety.  Additionally, in the May 29, 2015 Order, this Court dismissed Counts I and II in part, finding that for certain conduct Defendant did not violate the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 Pa. Stat. Ann. §§ 101-65, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 71 Pa. Stat. Ann. 201-1 to -9.3.  On March 31, 2016 (Doc. No. 59), Count IV was stricken by stipulation between the parties.

Regarding the remaining two claims, Defendant has filed a Motion for Summary Judgment (Doc. No. 62).  Plaintiff has filed a Response (Doc. No. 66) and Defendant a Reply (Doc. No. 68).  For reasons that follow, Defendants' Motion for Summary Judgment will be granted in part and denied in part.[1]

## II.     BACKGROUND

### A.     The Parties

Plaintiff Robert D. Sayre is a lawyer and resides at 850 Mt. Pleasant Road, Bryn Mawr, Pennsylvania.  (Doc. No. 67 ¶ 1.)  Defendant Customers Bank is a Pennsylvania state chartered bank and a wholly owned subsidiary of Customers Bancorp, Inc., a Pennsylvania corporation

---

[1]   In Counts I and II, Plaintiff alleges that Defendant violated the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 Pa. Stat. Ann. §§ 101-605, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 71 Pa. Stat. Ann. 201-1 to -9.3, by collecting at closing on his residential property the following from Plaintiff:  (1) $2,934 in attorney's fees; and (2) a $535 appraisal fee.  (Doc. No. 22 ¶¶ 55-66.)  As discussed below, the Court finds that Defendant did not violate Act 6 because the mortgage in question here is not a residential mortgage, and therefore Defendants' Motion for Summary Judgment will be granted on Count I.  Additionally, the Court will deny Defendants' Motion for Summary Judgment on the UTPCPL violation alleged in Count II.

with an office located at 1501 N. Broad Street, Suite 20, Philadelphia, Pennsylvania. (Doc. No. 22 ¶ 2.) Customers Bank acquired the assets of ISN Bank in 2011, including the mortgage loan at the center of this litigation.

### B.   The Mortgage Loan Transaction Between Plaintiff and ISN Bank

Plaintiff was employed by ISN Bank, a New Jersey state chartered bank, as Vice President and Counsel from June 20, 2005 through March 31, 2010. (Id. ¶¶ 5, 9.) On September 19, 2007, while employed at ISN Bank, Plaintiff purchased real property located at 2219 Gaul Street, Philadelphia, Pennsylvania (the "Property"). (Id. ¶ 3.) In connection with the purchase, Plaintiff entered into a mortgage loan transaction with ISN evidenced by a promissory note (the "Note") and a mortgage (the "Mortgage"). (Id. ¶¶ 4, 6; Doc. No. 44, Exs. A, B.) In accordance with the terms of the Note and Mortgage, ISN made a $98,000 loan to Plaintiff secured by a first priority mortgage lien on the Property. (Doc. No. 22 ¶ 6, 7; Doc. No. 44, Exs. A, B.) Plaintiff used the consumer loan primarily for personal, family, and household purposes. (Doc. No. 66-1). Plaintiff used the Property as one of his principal residences and stayed over-night several times before the property was ultimately sold in 2013. (Id.).

### C.   Plaintiff's Severance Agreement and Termination of Employment

On February 7, 2008, Benjamin S. Friedman, President of ISN, sent Plaintiff an e-mail memorializing ISN's agreement to provide Plaintiff with a minimum of six months severance pay in the event Plaintiff is terminated without cause. (Doc. No. 22 ¶ 11; Doc. No. 44, Ex. C.) On May 12, 2008, Plaintiff and Karl A. Towns, the new President of ISN, executed an agreement formalizing Plaintiff's severance terms (the "Severance Agreement"). (Doc. No. 22 ¶ 12; Doc. No. 44, Ex. D.) In relevant part, the Severance Agreement states that "in the event [Plaintiff] is terminated without cause, [Plaintiff] shall be entitled to six months continued salary at the same

level that [Plaintiff] receive[s] at the present time." (Doc. No. 44, Ex. D.)   The Severance

Agreement defines "cause" as follows:

> "Cause" shall mean a determination by a majority of the Management that
> Employee: (i) has misappropriated, stolen or embezzled funds or property of
> [ISN] or an affiliate of [ISN] or secured or attempted to secure personally any
> profit in connection with any transaction entered into on behalf of [ISN] or any
> affiliate of [ISN]; (ii) has, notwithstanding not less than thirty (30) days' prior
> written notice from Management, willfully and persistently failed to perform
> (other than by reason of illness or temporary disability, regardless of whether such
> temporary disability is or becomes a permanent disability, or by reason of
> vacation or approved leave of absence) his material duties; (iii) has been
> convicted of, or entered a plea of "nolo contendere" to, a felony (other than traffic
> violations); or (iv) has willfully or through gross negligence violated or breached
> any material provision of this Agreement, any material law or regulation or any
> written policy or code of business conduct or ethics of [ISN] to the material
> detriment of [ISN] or any affiliate of [ISN] or its business.   For purposes of this
> definition, no act or failure to act, on the part of [Plaintiff], shall be considered
> "willful" unless it's done, or omitted to be done, by [Plaintiff] in bad faith or with
> gross negligence.   Any act, or failure to act, based upon authority given pursuant
> to a resolution duly adopted by Management or based upon the advice of counsel
> for [ISN] shall be conclusively presumed to be done, or omitted to be done, by
> [Plaintiff] in good faith and in the best interests of [ISN].   The cessation of
> employment of [Plaintiff] shall not be deemed to be for Cause unless and until
> there shall have been delivered to [Plaintiff] a copy of [a] resolution, duly adopted
> by the affirmative action vote of not less than a majority of the membership of the
> Management at a meeting of the Management called and held for such purpose
> (after reasonable notice is provided to [Plaintiff] and [Plaintiff] is given an
> opportunity, together with counsel, to be heard before Management), finding that,
> in the good faith opinion of Management, [Plaintiff] was guilty of the conduct set
> forth in the clauses above, and specifying in writing the particulars thereof in
> detail.

(Id.)

In February 2010, Plaintiff informed ISN that he had cancer and would be required to

undergo surgery and follow-up treatment.  (Doc. No. 22 ¶ 12.)  On March 30, 2010, a few days

before a scheduled surgery, ISN advised Plaintiff that his employment with ISN would be

terminated at the close of business on March 31, 2010.  (Id. ¶ 14.)  On March 31, 2010, ISN sent

Plaintiff a letter terminating his employment.  (Id. ¶ 15; Doc. No. 44, Ex. E.)  At the time of his

termination, Plaintiff's base salary was $127,500.  (Doc. No. 22 ¶ 20.)

D.      **Plaintiff Attempts to Set Off His Mortgage Debt; ISN Is Acquired by Customers Bank**

On June 24, 2010, Plaintiff sent a letter to ISN, advising that he would exercise his rights under federal and state law, including his right to setoff the remaining balance due on his mortgage loan by the $63,750 payment he claims ISN owed to him under his Severance Agreement.  (Id. ¶¶ 22, 23; Doc. No. 44, Ex. F.)  Plaintiff included with this letter a check for $9,295.00, which he calculated to be the amount he owed ISN after the setoff.  (Id.)  Plaintiff stated in the letter that this check, combined with the setoff, represented payment in full of the Note and Mortgage, and he requested that ISN file a notice that the Mortgage was satisfied as required by Pennsylvania's Mortgage Satisfaction Act.  (Doc. No. 22 ¶¶ 22, 23; Doc. No. 44, Ex. F.)  ISN did not agree that Plaintiff was owed a $63,750 severance payment, and declined to follow Plaintiff's request to file the mortgage satisfaction notice.  (Doc. No. 22 ¶ 24.)  Nevertheless, Plaintiff stopped making Mortgage payments to ISN in June 2010.  (Id. ¶ 25.)  ISN thereafter reported Plaintiff's Mortgage loan as past due to various consumer reporting agencies. (Id. ¶ 26.)

In September 2010, Defendant Customers Bank acquired the assets of ISN.  (Id. ¶ 27.) Defendant also reported Plaintiff's Mortgage loan as past due to various consumer reporting agencies.  (Id. ¶ 29.)

On September 27, 2011, Defendant sent Plaintiff a letter notifying him that he was in default under the terms of the Note.  (Id. ¶ 30; Doc. No. 44, Ex. G.)  Defendant attached to this letter an "Act 6/91 Notice"[2] informing Plaintiff that he could cure the default by paying

---

[2]  An "Act 6/91 Notice" is a notice that, pursuant to Pennsylvania law, a mortgagee must send to a mortgagor at least thirty days before initiating foreclosure proceedings.  The notice informs the mortgagor of the mortgagee's intention to foreclose, and advises the mortgagor of the ability to cure the default through the Pennsylvania Homeowner's Emergency Mortgage Assistance Program.  See 35 Pa. Stat. Ann. § 1680.403c; 41 Pa. Stat. Ann. § 403.

$14,900.55, which was the total amount past due plus interest and fees.  (Id. ¶ 31; Doc. No. 44, Ex. G.)   This sum included a $385 appraisal fee.  (Id. ¶ 33; Doc. No. 44, Ex. G.)

On October 25, 2011, Plaintiff sent a letter to Defendant requesting that Defendant comply with the FDCPA, including a demand that Defendant provide evidence of its purported ownership of the Mortgage loan.  (Id. ¶ 36; Doc. No. 44, Ex. G.)  In December 2011, Plaintiff paid Defendant the amounts that Defendant asserted were due on the Mortgage because Plaintiff was advised that he would be unable to obtain a mortgage or any additional credit as long as the Mortgage was reported as past due.  (Doc. No. 22 ¶ 39.)  As a result of the payment which brought Plaintiff's loan up to date, Defendant did not commence a foreclosure suit against Plaintiff.  (Id. ¶ 40.)   On December 9, 2011, Plaintiff sent Defendant another letter demanding that Defendant comply with the FDCPA.  (Id. ¶ 41; Doc. No. 44, Ex. K.)

In the spring of 2013, Plaintiff entered into an agreement of sale for the Property and closing was scheduled for late June 2013.  (Doc. No. 22 ¶ 42.)  On June 25, 2013, Defendant provided a Payoff Request Letter (misdated June 25, 2012) seeking payment of, among other sums, the remaining mortgage balance of $54,624.64, attorney's fees of $2,934.01, and an appraisal fee of $535.  (Id. ¶ 43; Doc. No. 44, Ex. L.)  On or about June 27, 2013, Plaintiff advised Defendant that its claim for attorney's fees was in violation of federal and state laws and subjected Defendant to liability.  (Doc. No. 22 ¶ 45.)  Plaintiff also advised Defendant that the claim for appraisal fees was not authorized under the Note, Mortgage, or other loan documents. (Id. ¶ 46.)  Defendant nevertheless refused to retract its claim for the attorney and appraisal fees. (Id. ¶¶ 47, 48.)  In order to consummate the sale of the Property on July 2, 2013, Plaintiff paid the full amount demanded by Defendant.  (Id. ¶ 53.)  Plaintiff was then deemed current on payments by Defendant.

E.      **Plaintiff Files the Instant Lawsuit**

On May 21, 2014, Plaintiff filed a Complaint against Defendant in the Court of Common Pleas of Philadelphia County alleging violations of state law and the federal FDCPA.  (Doc. No. 1 ¶¶ 1, 2.)  On June 16, 2014, Defendant removed the action to this Court pursuant to 15 U.S.C. § 1692k(d), which gives a federal court subject matter jurisdiction over claims alleging violations of the FDCPA.  (Id. ¶ 5.)  On June 16, 2014, Defendant filed an Answer with Affirmative Defenses.  (Doc. No. 3.)

As noted above, Counts I and II of the Amended Complaint were dismissed in part and Counts III, V, VI, and VII were dismissed in their entirety.  Count IV was later dismissed by stipulation between the parties.  Defendant's instant Motion for Summary Judgment (Doc. No. 62) on the remaining claims in Counts I and II are ripe for disposition.

III.    **STANDARD OF REVIEW**

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Montgomery Cnty., Pa. v. MERSCORP Inc., 795 F.3d 372, 376 (3d Cir. 2015); Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of fact.  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158.   Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216 (internal quotation marks omitted)).

In deciding a Motion for Summary Judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)).   The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–49.   Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255.   If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Id. at 248.   In ruling on a Defendant's Motion for Summary Judgment, a mere scintilla of evidence in support of Plaintiff's position is insufficient. Id. at 252.   Enough evidence must exist such that a jury could reasonably find for Plaintiff. Id.   Plaintiff cannot merely rely upon assertions or speculation. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).   If

the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted.  Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009).

## IV.      ANALYSIS

### A.      Defendant's Motion for Summary Judgment with Respect to Customers Bank Alleged Act 6 Violations will be Granted

In Count I, Plaintiff alleges that Defendant violated the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 Pa. Stat. Ann. §§ 101-605, by collecting from Plaintiff (1) $2,934 in attorney's fees and a (2) $535 appraisal fee at closing on the sale of the Gaul Street residence.

The terms of Act 6 apply only to "residential mortgages."  41 Pa. Cons. Stat. § 406.  A residential mortgage is defined as follows:

> …obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a condominium unit.

Id.  At present the "base figure" is $217,873.  This figure is adjusted annually for inflation.  41 Pa. Stat. Ann. § 101.  However, prior to September 8, 2008, when Act 6 was amended, the base figure was $50,000.

Here, Plaintiff entered into a mortgage on September 19, 2007.  At that time, the base figure was $50,000.  This amount is applicable to Plaintiff's mortgage which totaled $98,000. The present base figure of $217,873 is not applied retroactively to his residential purchase. Therefore, the provisions in Act 6 do not afford Plaintiff any relief.

In Murphy v. Bank of America, N.A., the court was faced with substantially similar facts. In that case, the court found that, "[b]ecause the Pennsylvania General Assembly made no clear and manifest intention to make the 2008 Act 6 amendments retroactive, we must apply the definition of 'residential mortgages' as it existed in 2007. No statute shall be construed to be

retroactive unless clearly and manifestly so intended by the General Assembly." Murphy v. Bank of America, N.A., et al., WL 1020969 at *5 (E.D.Pa. Mar. 4, 2016) (quoting 1 Pa. Stat. and Cons. Stat. Ann. § 1926).

Despite this required holding, Plaintiff argues that the $50,000 base figure should not be applied to the instant case. Citing Glover v. Urden Law Offices, P.C., Plaintiff attempts to overcome the statutory limitation by claiming that the Pennsylvania Supreme Court would "liberally" construe Act 6 to cover the supposed harms incurred by the Plaintiff. (138 A.3d 195 (2016). However, Plaintiff's attempt to circumvent the central issue here that the Mortgage issued in 2007 on the Gaul Street Property is not covered by Act 6 is unavailing. The Pennsylvania Supreme Court in Glover did not interpret a retroactive base figure, but rather found that a liberal construction of Act 6 is necessary to protect consumers entering into mortgages which already fall under the Act 6 umbrella.

Here, Plaintiff does not have a claim under Act 6 based on the mortgage that was signed in 2007 because his mortgage was greater than the base figure amount set for residential mortgages. See Trunzo v. Citi Mortgage, 43 F. Supp. 3d 517, 535 (W.D. Pa. 2014) ("Notwithstanding the 2008 amendment, courts have looked to the bona fide principal amount set at the time of the transaction, and not at the subsequent date, for considering whether a residential mortgage comes under Act 6"). See also In re Harris-Pena, 446 B.R. 178, 187 (Bankr. E.D. Pa. 2009) (finding the pre-2008 base figure of $50,000 applied to a mortgage loan that closed in 2001, choosing to not apply the newly change laws to the present case); In re Grayboyes, No. 05-178, 2006 WL 437546, at *7 (E.D. Pa. Feb. 22, 2006) aff'd sub nom. In re Graboyes, 223 F. App'x 112 (3d Cir. 2007) ("The principal amount of a loan must be measured at the time of the consummation of the transaction, rather than at subsequent dates"). As a result,

Plaintiff does not have a claim under Act 6.  There is no genuine issue of material fact because the facts in this case show that Act 6 does not apply.

For all these reasons, Defendant's Motion for Summary Judgment on Count I will be granted.

**B. Defendant's Motion for Summary Judgment based on the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Claim will be Denied**

In Count II, Plaintiff alleges that Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 to -9.3, by collecting from Plaintiff (1) $2,934 in attorney's fees and a (2) $535 appraisal fee, again regarding from the mortgage held on the Gaul Street Property.

"To maintain a private right of action under the UTPCPL a plaintiff must demonstrate (1) 'ascertainable loss of money of property, real or personal,' (2) 'as a result' of defendant's prohibited conduct under the statute." Murphy, WL 1020969 at *6 (Mar. 3, 2016), quoting Kaymark v. Bank of America, N.A., 783 F. 3d 168 at 180 (3d Cir. 2015).  Regarding the first element, Defendant contends Plaintiff had no ascertainable loss.  But in accordance with the ruling in Kaymark, Plaintiff has alleged a concrete and definite economic loss, the fees in question.  Plaintiff set forth facts that could allow a reasonable jury to find that he "paid the disputed fees alleged to have deprived him of his property," as Kaymark suggests. Kaymark, 783 F. 3d 168 at 180.

Plaintiff also has shown that there are other genuine issues of material facts in this case. In particular, the parties disagree as to whether the fees were charged after the mortgage loan became current and if the fees were charged in violation of the terms of the mortgage itself. These are questions of fact and must be determined by a fact finder.  Therefore, because a

genuine dispute of material fact exists, Defendant's Motion for Summary Judgment (Doc. No. 62) will be denied.

## V.      CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment (Doc. No. 62) will be granted in part and denied in part.  Summary Judgment will be granted on Count I regarding the Defendant's alleged violation of Act 6.  Summary Judgment will be denied on Count II regarding the Unfair Trade Practices and Consumer Protection Law ("UTPCPL). An appropriate Order follows